Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ramiro Laboy Roque<br><br>Peticionario<br><br>v.<br><br>Olga Pérez y otros<br><br>Recurridos | Certiorari<br><br>2011 TSPR 64<br><br>181 DPR _____ |

Número del Caso: CC - 2008 - 903

Fecha: 26 de abril de 2011

Tribunal de Apelaciones:

Región Judicial de Caguas

Juez Ponente:

Hon. Jorge L. Escribano Medina

Abogado de la Parte Peticionaria:

Lcdo. Wilfredo R. Picorelli Osorio

Abogado de la Parte Recurrida:

Lcdo. José M. Ramírez Hernández

Materia: Deslinde

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramiro Laboy Roque

   Peticionario

        v.              CC-2008-903     Certiorari

Olga Pérez y otros

   Recurridos

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 26 de abril de 2011.

El presente caso nos brinda la oportunidad de determinar cuál es el Derecho aplicable a una construcción extralimitada, es decir, aquella que ha sido construida en parte en suelo propio y en parte en suelo ajeno.

I

El 25 de marzo de 2004, el Sr. Ramiro Laboy Roque presentó una demanda sobre deslinde, amojonamiento e inscripción de parcela contra los miembros de la sucesión Pérez Sánchez (Sucesión). La Sucesión es dueña a título de herencia de la Parcela 34 de la Comunidad María Jiménez en el

Barrio Hato Nuevo del municipio de Gurabo. Por su parte, el Sr. Ramiro Laboy, su hermano Víctor Laboy y la hija de éste, Myrna Laboy, son usufructuarios de la Parcela 35-A de la misma comunidad, ya que ésta pertenece en nuda propiedad al Departamento de la Vivienda de Puerto Rico. En dicha parcela éstos tienen construidas sus respectivas residencias.

Las parcelas 34 y 35-A son colindantes entre sí y surgen de la parcelación que hiciera el Departamento de la Vivienda para crear la comunidad antedicha. Ahora bien, por varios años las partes han tenido controversias en torno a la fijación de los linderos entre ambas parcelas.

De acuerdo a las determinaciones de hecho del Tribunal de Primera Instancia, en el 1994, el Sr. Ramiro Laboy Roque solicitó el título de propiedad para la Parcela 35-A. No obstante, dicha solicitud fue denegada por existir en la parcela dos residencias.[1] Más adelante, en 1997, su hermano Víctor Roque solicitó los permisos de construcción necesarios para ampliar su residencia y, posteriormente, comenzó a construir lo que se convirtió en la tercera estructura de la parcela. Esa estructura es la residencia de su hija, la Sra. Myrna Laboy.

El 30 de enero de 2003, los señores Víctor Laboy, Juan B. Pérez, Francisco Pérez y Humberto Meléndez (ingeniero del Departamento de la Vivienda) y las señoras

---

[1] La norma vigente en ese momento no permitía la concesión de títulos de propiedad a parcelas que tuvieran más de una residencia. No es hasta el 1999 que se aprueba la norma de conceder títulos de propiedad a los usufructuarios aunque exista más de una estructura en la parcela.

Olga Pérez y Myrna Laboy, comparecieron ante el Tribunal de Primera Instancia, Sala Municipal de Gurabo, en un procedimiento al amparo de la Ley Núm. 140 de 23 de julio de 1974, conocida como Ley de Controversias y Estados Provisionales de Derecho. En febrero de ese año, dicho tribunal les informó a los comparecientes que acudieran a una Sala Superior mediante una acción ordinaria de deslinde ya que la colindancia de ambas parcelas no estaba clara.[2]

Así las cosas, el 25 de marzo de 2004, el Sr. Ramiro Laboy Roque presentó la demanda sobre deslinde contra la Sucesión Pérez Sánchez, titulares de la Parcela 34, y contra el Departamento de la Vivienda. Posteriormente, en noviembre de 2006, el señor Laboy Roque presentó una demanda enmendada e incluyó una nueva alegación. Señaló que había construido de buena fe una estructura en la Parcela 35-A que podría ocupar parte de la Parcela 34. En lo pertinente, solicitó que, en caso de haber invadido parte de la Parcela 34, se aplicaran las disposiciones del Código Civil relativas a la figura de la accesión y que benefician al edificante de buena fe.

Los demandados contestaron la demanda enmendada y entre otras cosas, negaron la alegación del demandante en torno a que si la estructura del demandante invadía la Parcela 34 ésta había sido construida de buena fe. Durante el proceso judicial se presentó evidencia testifical, así como documental, con la que se intentó aclarar los linderos

---

[2] Apéndice del *certiorari*, pág. 1.

de ambas parcelas. Del expediente surge un plano preparado alegadamente por el Ing. Humberto Meléndez De Jesús el 29 de enero de 2003, que refleja la existencia de sólo dos estructuras en la Parcela 35-A y una estructura en la Parcela 34. En abril de 2005, por orden del Tribunal de Primera Instancia, el ingeniero Meléndez intentó realizar el replanteo de los puntos de colindancia entre ambas parcelas. Sin embargo, debido a la discordia entre ambas familias éste no pudo lograrlo.[3]

No obstante, según surge de las determinaciones de hecho del foro primario, el ingeniero Meléndez De Jesús pudo realizar el replanteo de los puntos de colindancia el 27 de septiembre de 2005. Para realizar la mesura consultó el plano original de la parcelación de 1944 y encontró algunos errores en los puntos de colindancia. En lo pertinente, sostuvo que cuando se preparó dicho plano los instrumentos de medición no eran tan exactos como ahora y que los errores en los puntos de colindancia eran atribuibles a esa razón.

Así, en abril de 2008, luego de aquilatar toda la prueba, el Tribunal de Primera Instancia declaró "ha lugar" la demanda de epígrafe. En esencia, dispuso que la estructura construida en la Parcela 35-A donde reside la Sra. Myrna Laboy comenzó a construirse como una ampliación de la casa del Sr. Laboy Roque. Además, de acuerdo al plano presentado por el Ing. Ismael Carrasquillo -perito

---

[3] Apéndice del *certiorari*, págs. 4-5.

ingeniero de la familia Laboy- el foro sentenciador reconoció que la estructura construida invadía en forma de triangulo una pequeña área en dos puntos de la Parcela 34. Asimismo, expresó que no se habían configurado los elementos requeridos para los constructores de mala fe ya que la referida estructura se había construido cuando todavía no existía una determinación del Departamento de la Vivienda sobre la colindancia exacta de las parcelas. Además, la estructura se construyó dentro de los límites marcados por una verja de cemento y "cyclone fence" que dividía ambos predios y que llevaba más de 30 años de construida. Sin embargo, en la acción de deslinde se reconoció que dicha verja estaba en su totalidad dentro de la Parcela 34. Según los ingenieros Carrasquillo y Meléndez, la verja y los triángulos de la casa de la Sra. Myrna Laboy invaden 149.475 mc de la Parcela 34 a lo largo del lado norte.

Por otro lado, el Sr. Pérez, uno de los demandados del pleito, reconoció que la tercera estructura se construyó para el año 2002. Ante eso, nunca se presentaron querellas en A.R.Pe. sobre la ampliación de la verja o la construcción.

Por último, conforme a la recomendación de los ingenieros que testificaron en corte, el Tribunal de Primera Instancia ordenó que a la Parcela 35-A se le descontara la misma cantidad de terreno que la estructura de ésta invade en la Parcela 34 y se le sume a la cabida de

ésta última. Ello, porque de esa forma las parcelas resultarían con la misma cantidad de terreno con la que contaban originalmente.[4]

Inconformes, los propietarios de la Parcela 34, la sucesión Pérez Sánchez, acudieron ante el Tribunal de Apelaciones. Dicho foro revocó el dictamen del foro primario y concluyó que la residencia de la Sra. Myrna Laboy había sido construida de mala fe porque ésta se construyó en suelo ajeno luego de haber comenzado el litigio.

Por no estar conforme con el dictamen antedicho, el Sr. Ramiro Laboy acudió ante este Tribunal y señaló los errores siguientes:

> **PRIMER ERROR:** ERRÓ EL TRIBUNAL DE APELACIONES AL CONCLUIR QUE MYRNA LABOY ES UNA EDIFICANTE DE MALA FE, REVOCANDO LA DETERMINACIÓN DEL TRIBUNAL DE PRIMERA INSTANCIA, EN ESE SENTIDO, BASADO SOLO [SIC] EN UN PIEZA DE EVIDENCIA. CUANDO LA DEMÁS EVIDENCIA DOCUMENTAL Y TESTIFICAL SOSTIENEN LA DETERMINACIÓN DEL TRIBUNAL DE PRIMERA INSTANCIA.

> **SEGUNDO ERROR:** ERRÓ EL TRIBUNAL DE APELACIONES AL CONCLUIR QUE EL TRIBUNAL DE PRIMERA INSTANCIA COMETIÓ ERROR MANIFIESTO EN LA APRECIACIÓN DE LA PRUEBA Y QUE LA CONCLUSIÓN DE EDIFICANTE DE BUENA FE NO CONSTITUYE EN BALANCE MÁS RACIONAL Y JUSTICIERO EN LA APRECIACIÓN DE LA PRUEBA.[5]

## II

Las confusiones con los límites de los inmuebles pueden acarrear controversias sobre las construcciones que

---

[4] Apéndice del *certiorari*, págs. 58-62.

[5] Petición de *certiorari*, pág. 6.

excedan los linderos de fincas colindantes. En consecuencia, el caso de autos nos brinda la oportunidad de expresarnos de lleno en torno a la figura que trata este asunto y que se conoce como la construcción extralimitada.[6]

De entrada, debemos exponer lo dispuesto en nuestro Código Civil en torno a la figura de la accesión. El Art. 287 dispone que "[l]a propiedad de los bienes, ya sean muebles o inmuebles, lleva consigo el derecho por accesión, a todo lo que ellos producen, o se les une o incorpora, natural o artificialmente".[7] Es decir, la accesión implica el "derecho a un incremento patrimonial a consecuencia de que ya se tiene la propiedad de ciertos bienes, y lo que se adquiere es lo que los bienes producen, o se les une o incorpora, natural o artificialmente".[8]

Conforme a la disposición antedicha, los artículos 294 a 309 del Código Civil regulan la accesión de inmuebles.[9] El Art. 294 reconoce como regla general que todo lo que se edifica, planta o siembra en predios ajenos, así como las mejoras o reparaciones hechas en ellos, le pertenecen al dueño de los mismos, sujeto a las demás disposiciones que regulan este tipo de accesión.[10] Asimismo,

---

[6] Vale señalar que en <u>Marchand v. Montes</u>, 78 D.P.R. 131, 142 (1955), este Tribunal realizó una breve mención de la figura de la construcción extralimitada. No obstante, no existe otro pronunciamiento jurisprudencial que discuta la figura en cuestión.

[7] 31 L.P.R.A. sec. 1131.

[8] J. Puig Brutau, <u>Compendio de Derecho Civil</u>, Barcelona, Ed. Bosch, 1989, Vol. III, pág. 123.

[9] 31 L.P.R.A. secs. 1161-1176.

[10] 31 L.P.R.A. sec. 1161.

el Art. 297 regula los casos en los que se ha construido una edificación de buena fe en suelo ajeno.[11] Ante esas circunstancias, el dueño del terreno tendrá derecho a hacer suya la obra, previo al pago de la compensación establecida en dicho artículo; a obligar al que construyó a pagar el precio del terreno o; a no ejercitar ninguna de las acciones anteriores.[12] De igual forma, el edificante de buena fe tendrá derecho a la compensación establecida en el Art. 297, así como a retener la posesión de lo edificado mientras no se le compense.[13] En cambio, el que edifica de mala fe no tiene derecho alguno sobre lo edificado ni a una compensación. El dueño del terreno puede hacer suya la edificación o incluso puede ordenar la demolición de lo edificado a costa del que edificó de mala fe.[14]

Lo antes expuesto se sustenta en el conocido principio *superficies solo cedit*, por el cual el suelo es lo principal y lo edificado es lo accesorio. Es decir, al adjudicarle al suelo la principalidad, éste absorbe la titularidad de lo allí edificado (lo accesorio).[15] Es norma claramente establecida que de este principio deriva la existencia de una cosa que ha de tenerse por principal y de

---

[11] 31 L.P.R.A. sec. 1164.

[12] Íd.

[13] Íd.

[14] Véanse, Arts. 298 y 299 del Código Civil, 31 L.P.R.A. secs. 1165 y 1166.

[15] Puig Brutau, op. cit., pág. 128.

otra accesoria, que al unirse forman un ente indivisible.[16] Por consiguiente, el dueño del suelo en el que se construye una estructura obtiene la propiedad de lo incorporado.

**Sin embargo, es necesario señalar que el Art. 297 sólo regula los casos en que toda la construcción recae en suelo ajeno. Nuestro Código Civil no ha previsto el caso en el que la construcción se realice en una finca propia pero excediendo sus linderos, por lo que el suelo sólo es ajeno en parte.** Por consiguiente, es muy difícil aplicar las reglas relativas a la construcción en suelo ajeno a la construcción simplemente extralimitada. Por ejemplo, si el edificante ha actuado de buena fe no tendría sentido aplicarle el Art. 297 porque conllevaría a que el dueño del terreno ajeno adquiriese por accesión toda la edificación. Sin embargo, es evidente que lo anterior sería un absurdo porque no toda la construcción está sita en suelo ajeno. De igual forma, no tendría sentido que el dueño del suelo ajeno obtenga la titularidad de la porción extralimitada y así pase a ser copropietario de la edificación. Incluso, aplicar la normativa antedicha sobre la accesión a los casos del edificante de mala fe, implicaría la demolición de toda la estructura incluyendo la porción que se encuentra en suelo propio.

En fin, en el supuesto de una construcción extralimitada, ¿qué principios legales han de regir? ¿Qué

---

[16] B. Verdera Izquierdo, _La construcción extralimitada: revisión jurisprudencial_, Núm. 673, Revista Crítica de Derecho Inmobiliario, pág. 1800 (2002).

obtendría el edificante y que obtendría el dueño del suelo ajeno? Para poder disponer de la laguna legal que encierra nuestro ordenamiento al respecto, es importante reconocer que en el Derecho comparado podemos encontrar algunas normas que han contemplado el asunto en controversia. Veamos.

**España**

El Código Civil de España, de donde proviene gran parte del nuestro, posee la misma laguna legal con relación a los casos de construcciones extralimitadas. En 1908, el Tribunal Supremo español aplicó el Art. 361 del Código Civil español, análogo al Art. 297 nuestro, a una construcción extralimitada.[17] Sin embargo, desde mediados del siglo pasado la jurisprudencia española, así como los tratadistas, han creado una doctrina altamente reiterada, que reconoció la inaplicabilidad del referido artículo y ha llenado el vacío legal resultante. En la sentencia de 31 de mayo de 1949, el Tribunal Supremo español finalmente reconoció que el Art. 361 y el principio *superfices solo cedit* no les son aplicables a las construcciones extralimitadas "ya que ellos carecen de la base común a los supuestos para los que están establecidos".[18]

---

[17] S. de 12 de diciembre de 1908, Núm. 20, T. 112, Jurisprudencia Civil 921.

[18] S. de 31 de mayo de 1949, Núm. 721, XVI, Repertorio de Jurisprudencia 436, 437. Según el tribunal español la norma del Art. 361 (Art. 297 nuestro):

   quiebra si el dueño del suelo no lo es de toda la extensión del mismo, porque cuando esto sucede y lo construido constituye con aquél una unidad inseparable por no poderse hacer, como previenen

De esa forma, dicho dictamen reconoció que el Art. 361 y siguientes del Código Civil español no aplican a los problemas ocasionados por la construcción extralimitada. Así, pues, la alta curia española declaró que "por la notoriedad del mayor valor e importancia que se han de reconocer, por sus condiciones y destino, al edificio construido, unido al suelo propio del edificante demandado, sobre la parte de terreno ajeno invadido [de buena fe] por la construcción, tiene aquél derecho a adquirir esta porción mediante pago de su precio…".[19] Es decir, la solución judicial reconoció un tipo de accesión a la inversa a aquella construcción extralimitada de buena fe. Por consiguiente, si el edificante ha procedido de buena fe, la construcción no debe ser demolida ni dividida, mas bien el suelo parcialmente invadido ha de pertenecer por accesión al dueño de la estructura porque ha pasado a ser un todo indivisible junto con dicha estructura.[20] Ahora bien, en compensación, "el propietario del terreno invadido será indemnizado por el precio del suelo ocupado, más los daños y perjuicios que se le hayan ocasionado".[21] El pago del precio del suelo ocupado se sustenta en la aplicación

---

los artículos 334 y 360 del Código Civil [Arts. 263 y 296 del nuestro] su división sin menoscabo, la accesión no se consuma con el artículo antes citado y del 358 [Art. 294 nuestro], por falta de la base, necesaria para su aplicación, de que sean distintos los dueños del suelo y del edificio sobre él levantado. Íd.

[19] Íd., pág. 438.

[20] Puig Brutau, op. cit., pág. 132.

[21] Íd.

parcial del Art. 361 del Código Civil español, mientras que el pago de los daños se entiende que surge del principio básico dispuesto en el Art. 1902 del mismo código.[22]

La accesión invertida se configura como una excepción al principio *superficies solo cedit* expuesto en el Art. 361 del Código Civil español. Por ello, la doctrina española ha entendido que dicho artículo no debe aplicarse con total rigidez, sino que se deben establecer espacios intermedios.[23] Así, en los casos de construcciones extralimitadas la doctrina utiliza el principio *accesorium sequitur principale* que surge de los Artículos 375, 376 y 377 del Código Civil español, los cuales se refieren a la relación de principalidad y accesoriedad entre dos cosas. Este principio supone varios criterios: primero, "el destino económico de la cosa (art. 376 del Código Civil)"; segundo, y en defecto del anterior, "se acude al valor pecuniario considerándose principal la cosa de mayor valor" y, como último criterio, "se acude a la cosa de mayor volumen (Art. 377 del Código Civil)".[24]

Conforme a lo anterior, en la sentencia de 15 de junio de 1981, el Tribunal Supremo español señaló, al tratar la figura de la accesión invertida, que:

> …su aplicación es, en nuestro sistema, una excepción a la regla general en la materia de *superficie solo cedit*, recogida en el artículo

---

[22] D. Espín Cánovas, <u>Manual de Derecho Civil Español</u>, Madrid, 6ta ed., Ed. Revista de Derecho Privado, 1981, pág. 154.

[23] Verdera Izquierdo, <u>op. cit.</u>.

[24] Íd., pág. 1801.

361 del Código Civil, que es sustituida por la de *accesorium cedit principali*, atribuyendo la calidad de principal a lo construido cuando su importancia y valor superan al de la parte del suelo (o subsuelo) invadido; cumplimiento del que habrá que decidir la autoridad judicial…[25]

Con lo anterior, la doctrina española ha propugnado la accesión invertida como la medida más justa para atender los casos de construcciones extralimitadas de buena fe. El Tribunal, en su decisión de 1949, fundamentó su dictamen en los principios generales del Derecho, especialmente en razones de equidad.[26] De esa forma, se excluyeron las fórmulas antieconómicas que conducen a la demolición del edificio construido.[27] "[L]a finalidad de la accesión invertida es evitar destruir lo edificado o crear una copropiedad o un derecho de superficie".[28] Así, se intenta resolver las controversias "en atención a razones de política económica, social y de buena vecindad".[29] Como comenta Diez-Picazo: "[l]a solución más justa es conceder a la autoridad judicial la facultad de atribuir lo edificado al que de buena fe lo haya hecho, compensando al otro

---

[25] S. de 15 de junio de 1981, Núm. 2524, XLVIII (Vol. I) Repertorio de Jurisprudencia 2092, 2094.

[26] S. de 31 de mayo de 1949, Núm. 721, XVI, Repertorio de Jurisprudencia 436.

[27] L. Diez-Picazo y L. Ponce de León, Fundamentos del Derecho Civil Patrimonial, Navarra, 5ta ed., Ed. Aranzadi, 2008, págs. 305-306.

[28] Verdera Izquierdo, op. cit., pág. 1806.

[29] S. de 29 de julio de 1994, Núm. 6305, LXI (Vol. III) Repertorio de Jurisprudencia 8048.

propietario con el pago del precio y la indemnización de los daños y perjuicios".[30]

La solución española no sólo se ha consolidado en la jurisprudencia posterior sino que además se han precisado los criterios aplicables a este tipo de controversia. Por ejemplo, en la sentencia de 22 de marzo de 1996, el Tribunal Supremo español estableció con claridad los cinco criterios que deben concurrir para que se dé la figura de la accesión invertida por construcción extralimitada, a saber:

> a) que quien la pretenda sea titular de lo edificado; b) que el edificio se haya construido en suelo que en parte pertenece al edificante y en parte es propiedad ajena; c) que las dos partes del suelo formen con el edificio un todo indivisible; d) que el edificio unido al suelo del edificante tenga una importancia y valor superior a los del suelo invadido; y e) que el edificante haya procedido de buena fe.[31]

El primer criterio es un principio claro de que sólo los titulares de la edificación extralimitada son los que pueden solicitar la porción del terreno invadido por vía de la accesión invertida.[32] No obstante, como señala el inciso

---

[30] Diez-Picazo, op. cit., pág. 306.

[31] S. de 22 de marzo de 1996, Núm. 215/1996, XLIII (Vol. II) Repertorio de Jurisprudencia 3474.

[32] Se entiende que la figura no aplica "cuando el extralimitante no es el propietario vecino (titular de un derecho limitado, poseedor), puesto que al dueño del terreno, desde el que se realiza la invasión, no se le puede obligar a adquirir la porción ajena que otro invadió, ni se puede reconocer este derecho al extralimitante no propietario, ya que en este caso la situación de comunidad que se querría evitar se reproduciría al final de su posesión de la finca desde que la edificó". A. Carrasco Perera, "Ius Aedeficandi" y Accesión (La Construcción en suelo ajeno en el marco de los principios urbanísticos), Madrid, Ed. Montecorvo, 1986, pág. 354.

(b), es importante que el edificante también sea el titular del terreno porque de lo contrario se crearía un problema de copropiedad, lo que precisamente la doctrina busca evitar. El segundo, exige un supuesto de extralimitación, es decir, la edificación tiene que estar construida en parte en terreno propio y en parte en terreno ajeno. Esto incluye las extralimitaciones tanto en el subsuelo como en el vuelo del terreno ajeno.[33] Como tercer criterio se señala que la construcción extralimitada tiene que formar un todo indivisible con el suelo ajeno en que se sustenta. Conforme a lo anterior, la doctrina hace referencia sólo a las edificaciones y así excluye las plantaciones o siembra, ya que estas últimas no cumplen con el requisito de indivisibilidad.[34] Además, de ser divisible se podría entender como un supuesto típico de la accesión de una construcción en suelo ajeno.

Por su parte, el cuarto criterio señala que el edificio que se extralimita en suelo ajeno tiene que ser de un valor superior al terreno invadido. En ese sentido, la jurisprudencia española ha sostenido que el valor a computarse es el del edificio en su totalidad y éste se contrapondrá al valor de la porción de terreno invadido.[35] Ello, acarrea el que en la mayoría de las ocasiones sea

---

[33] Véase, S. de 3 de abril de 1992, Núm. 2936, LIX (Vol. II) Repertorio de Jurisprudencia 3900, 3901.

[34] S. de 22 de marzo de 1996, *supra*.

[35] Véanse, S. de 1 de octubre de 1984, Núm. 4750, LI, Repertorio de Jurisprudencia 3683; S. de 11 de junio de 1993, Núm. 5409, LIX, Repertorio de Jurisprudencia 3900.

difícil no cumplir con ese requisito. La lógica de este criterio descansa en que sería un contrasentido económico que el remedio de la accesión invertida sea peor que la destrucción de la porción extralimitada.

Por último, está el criterio de que el edificante haya actuado de buena fe. El Código Civil español no define el concepto de buena fe en asuntos de accesión, por lo que la doctrina acude a los Artículos 433 y 1950 de dicho Código. Así, conforme al análisis de ambas disposiciones, se entiende que es edificante de buena fe aquel que "ignore que el terreno en el que está edificando es ajeno".[36] Ahora bien, como parte del criterio de la buena fe, en varias sentencias del Tribunal Supremo español se ha señalado la necesidad de que no se haya producido oposición del titular del predio invadido porque ello anularía la buena fe del edificante.[37] Ello, porque para que la invasión del edificante sea de buena fe "es indispensable que el propietario que sufra la invasión no se haya opuesto a su ejecución oportunamente".[38] En contraste, hay otra vertiente que entiende que la oposición del dueño del terreno invadido es un elemento indispensable, adicional e independiente a la buena fe del edificante que se

---

[36] B. Verdera Izquierdo, op. cit.

[37] S. de 11 de marzo de 1985, Núm. 1137, LII, Repertorio de Jurisprudencia 951, 953; S. de 27 de octubre de 1986, Núm. 6012, LIII, Repertorio de Jurisprudencia 5872, 5875; S. de 23 de julio de 1991, Núm. 5416, LVIII, Repertorio de Jurisprudencia 7345, 7347.

[38] S. de 11 de marzo de 1985 y S. de 23 de julio de 1991, supra.

extralimita.[39] Se ve la oposición del dueño del terreno invadido como un factor autónomo que impide que se produzcan los efectos de la accesión invertida y no un elemento de la buena fe.

Por su parte, en el caso del edificante de mala fe, hay un sector de la doctrina que entiende que el dueño del terreno invadido puede optar entre dos opciones: exigirle al edificante el precio del terreno más los daños sufridos o adquirir todo el edificio y el suelo no suyo que ocupa, mediante la compensación económica que fijen los tribunales conforme al Art. 362 del Código Civil español.[40] Por otro lado, a base de un argumento construido sobre los Arts. 361 y 363 del Código Civil español, Albaladejo propone que el dueño del terreno pueda optar entre que se le pague el valor del terreno invadido o exigir la demolición de lo construido sobre él, en ambos supuestos la indemnización conlleva los daños que la invasión haya causado.[41] Sin embargo, la postura mayoritaria reconoce que el dueño del terreno puede ejercitar el derecho que le concede el Art. 363 del Código Civil español (análogo al 299 del nuestro) y solicitar la demolición de la porción que invade su

---

[39] Carrasco Perera, op. cit., pág. 352.

[40] J. Latour Brotons, La Construcción Extralimitada, L, (Núm. 3) Revista de Derecho Privado 261, 265 (1966).

[41] M. Albaladejo, Derecho Civil, 2da ed., Barcelona, Ed. Bosch, T. III, Vol. I, págs. 306-308. En las circunstancias antedichas los daños podrían ser, "si opta por enajenar el terreno, por lo que el perder el terreno perjudique el valor de lo que resta; y si opta por exigir la demolición, por la privación del uso del terreno durante el tiempo que permaneció construido". Íd., pág. 306.

terreno.[42] Ello, porque de su mala fe el edificante no puede derivar ningún beneficio excepcional.[43]

En los supuestos en que tanto el dueño del terreno invadido como el edificante hayan obrado de mala fe, la doctrina sostiene que es aplicable el Art. 364 del Código Civil español.[44] En otras palabras, cuando concurre la mala fe de ambos, sus derechos serán los mismos que éstos tendrían si hubieran actuado de buena fe.

**Otras jurisdicciones**

En Italia, el Código Civil regula la construcción extralimitada y reconoce la figura de la accesión invertida. El Art. 938 del Código Civil italiano señala que "si en la construcción de un edificio se ocupa en buena fe una porción del fondo colindante, y el propietario de éste no se opone dentro de tres meses del día en que inició la construcción, el juez, considerando las circunstancias, puede asignar al constructor la propiedad del edificio y del terreno ocupado. El constructor tendrá que pagar al propietario del terreno el doble del valor de la superficie ocupada, y además indemnizar los daños".[45] (Traducción

---

[42] Puig Brutau, op.cit., pág. 132.

[43] Íd.

[44] Albaladejo, op. cit., pág. 309; Verdera Izquierdo, op. cit., pág. 1818.

[45] "Se nella costruzione di un edificio si ocupa in buona fede una porzione del fondo attiguo, e il proprietario di questo non fa opposizione entro tre mesi dal giorno in cui obbe inizio la costruzione, l´autorità giudiziaria, tenuto conto delle circostanze, può attribuire al costruttore la propietà dell´edificio e del suolo occupato. Il costruttore è tenuto a pagare al proprietario del suolo il doppio del valore della superficie occupata, oltre il risarcimento dei danni". A. Scialoja y G. Branca (eds.), Commentario del Codice Civile,

nuestra). Esta disposición busca garantizar el interés en el desarrollo de las construcciones, y a su vez tutelar la buena fe del constructor versus la mala fe del propietario del suelo invadido, quien después de comenzada la construcción o cuando esté terminada sin su oposición, podría reclamar la demolición o su adquisición a base de los principios de accesión.[46]

Conforme al artículo reseñado, el constructor tiene que haber edificado de buena fe y que el propietario del suelo invadido no se haya opuesto dentro de los tres meses desde que inició la construcción. La doctrina italiana ha reconocido que la buena fe del constructor no debe confundirse con la buena fe del poseedor, porque la ley no requiere que el constructor posea de buena fe el terreno ocupado, sino que ignore que construye en terreno ajeno.[47] No obstante, la propiedad de la porción del edificio construido en suelo ajeno, así como la porción de suelo invadida, sólo será del constructor una vez se emita una decisión judicial al respecto.[48] En otras palabras, la transferencia de la propiedad del terreno no se da por el hecho de la construcción, sino por la sentencia del juez, la cual debe considerar la oportunidad de que opere la transferencia. Así, si procede la transferencia el

---

4ta ed., Bologna, Zanichelli Editore, 1976, Libro Tercero, Art. 938, pág. 511.

[46] Íd.

[47] Íd., pág. 513.

[48] Íd., pág. 512.

constructor estará obligado a indemnizarle al dueño del terreno invadido los daños que su construcción le haya causado y a pagarle el doble del valor del terreno ocupado.

Por otro lado, el Art. 1343 del Código portugués es similar al precepto italiano, con la excepción de que el constructor no está obligado a pagar el doble del valor de la porción del terreno invadido, sino simplemente su valor. Además, como parte de la indemnización en daños se incluirá la eventual depreciación del terreno restante.

En el caso del Código Civil suizo, el Art. 674 también reconoce el que un constructor de buena fe pueda adquirir la propiedad de la porción de terreno invadido. Dicho precepto dispone que la construcción que se extralimita permanece como parte integral del inmueble del que parte cuando su propietario tiene un derecho real a su subsistencia. Asimismo, el derecho sobre dicha extralimitación será inscrito en el Registro como servidumbre. La disposición suiza señala que si "la edificación en exceso se realizó sin derecho, y el perjudicado, no obstante conocerla, no se opuso a ella oportunamente, el constructor que haya procedido de buena fe adquiere un derecho real sobre ella o sobre la propiedad del suelo previa la correspondiente indemnización".[49]

Por su parte, aunque en los casos de construcciones extralimitadas los Derechos romano y común aplicaban

---

[49] J. Santos Briz y otros, Tratado de Derecho Civil: Teoría y Práctica, Barcelona, Ed. Bosch, 2003, T. II, pág. 156.

rigurosamente el principio *superficies solo cedit*, el Código Civil alemán rechazó seguir esa vertiente. Los Artículos 912 a 916 disponen que el propietario tiene que tolerar las construcciones que invadan su terreno si no ha mediado culpa del constructor.[50] La doctrina alemana sostiene que el deber de tolerar las construcciones extralimitadas se da si: 1) la construcción erigida ha traspasado los límites del solar propio; 2) el constructor es el propietario o copropietario de la finca cuyos límites pasa la construcción; 3) el que construye no ha incurrido en dolo ni *culpa lata* al construir y; 4) el vecino facultado para protestar ha guardado silencio.[51]

La concurrencia de estos supuestos resulta en varios efectos. Primero, el propietario invadido que calla ha de tolerar la construcción extralimitada. Segundo, conforme las disposiciones del Código Civil alemán, el deber de tolerancia se compensa con un derecho a indemnización pecuniaria. El propietario de la finca invadida puede exigir una renta en metálico pagadera por anualidades anticipadas. Por último, la superficie invadida por la construcción ajena continuará siendo propiedad de aquel a quien pertenecía antes de la extralimitación. No obstante, el Art. 915 del Código Civil alemán le otorga al propietario del suelo invadido un derecho a que el

---

[50] L. Enneccerus, T. Kipp y M. Wolff, <u>Tratado de Derecho Civil</u>, (B. Pérez y J. Alguer, trads.), Barcelona, Ed. Bosch, 1971, T. III, Vol. 1, pág. 363.

[51] Íd., págs. 363-365.

constructor se haga cargo del suelo invadido y exigir en cualquier momento que se le pague su valor a cambio de trasmitir la titularidad de la superficie invadida.[52]

**III**

**A**

Como ya hemos visto, la tendencia que promueve el uso de la figura de la accesión invertida en supuestos de construcciones extralimitadas de buena fe ha sido ampliamente acogida en las jurisdicciones civilistas. Ahora bien, en el caso de Puerto Rico, adelantamos que el Código Civil no regula dichos supuestos. Por tal razón, ante el vacío legal existente, nos corresponde resolver la controversia conforme a la equidad y los principios generales del Derecho.[53]

El principio *superficies solo cedit* dispuesto en nuestro Código Civil es muy rígido para resolver de forma justa un asunto de extralimitación. En su momento, dicho principio expresó la relevante función de la tierra como un bien capital de mayor valor.[54] Sin embargo, ello no tiene mucho sentido en el mundo actual porque la mayoría de las veces lo construido puede tener mayor valor que el suelo en el que está sito.[55] En consecuencia, al constructor que se

---

[52] Íd., págs. 365-369.

[53] Véase, Art. 7 del Código Civil, 31 L.P.R.A. sec. 7.

[54] Véase, E. Vázquez Bote, <u>Tratado Teórico, Práctico y Crítico de Derecho Privado Puertorriqueño</u>, Orford, New Hampshire, 1991, T. VII, Vol. I, págs. 369.

[55] Íd.

extralimita de buena fe en suelo ajeno se le ha reconocido un derecho de accesión invertida que se fundamenta principalmente en la relevancia social de la vivienda, el alto costo de ésta y otras construcciones, y en lo insensato que sería destruir lo que tanto valor social y económico tiene.[56]

Por tal razón, adoptamos la posición española que reconoce la accesión invertida por estimar que es la que mejor reconcilia los intereses en conflicto. De esta forma, adoptamos los requisitos elaborados por la doctrina española, que deben concurrir para que se dé la accesión invertida. Estos requisitos son: **1) que quien pretenda la accesión invertida sea el titular de lo construido; 2) que el edificio se haya construido en parte en suelo ajeno y en parte en suelo que le pertenece al edificante; 3) que las dos partes del suelo formen con el edificio un todo indivisible; 4) que el edificio unido al suelo del edificante tenga una importancia y valor superior a los del suelo invadido; y 5) que el edificante haya procedido de buena fe.**

La norma que anunciamos hoy no es ajena a nuestra jurisdicción. En efecto, en el caso <u>Marchand v. Montes</u>, 78 D.P.R. 131, 142 (1955), en el escolio 9, este Tribunal hizo referencia, por primera vez, a la figura de la extralimitación al hacer la distinción siguiente:

> El presente no es un verdadero caso de
> extralimitación, es decir, no es uno en que el

---

[56] Íd.

> dueño de un solar construya en éste y por error o inadvertencia se extralimita y edifica de buena fe en parte de un solar ajeno. En tal caso las consecuencias, de ordinario, son distintas. Véase la sentencia del Tribunal Supremo de España del 31 de mayo de 1949, 26 Jur. Civ. (nueva serie), pág. 1090.

Así, no sólo mencionamos la figura de la extralimitación, sino que reconocimos la solución provista por la jurisprudencia española, particularmente lo resuelto en la sentencia del Tribunal Supremo español de 31 de mayo de 1949. En dicha sentencia, la alta curia española reconoció la inaplicabilidad de las disposiciones de la accesión a los supuestos de extralimitación y a se vez, reconoció la accesión invertida como solución en equidad.

Además, la norma anunciada ha sido ampliamente recomendada por sectores de la academia puertorriqueña. Por ejemplo, el profesor José Ramón Vélez Torres había expresado que ante un problema de construcción extralimitada, este Tribunal debía brindar una solución conforme a la regla establecida por la jurisprudencia española y los códigos europeos.[57] Por su parte, el profesor R.E. Bernier, al analizar la solución provista por la doctrina española, señaló que: "[a]l mismo resultado puede y debe llegarse en Puerto Rico siguiendo los mismos razonamientos del Tribunal Supremo de España".[58] De igual forma, el tratadista Vázquez Bote, cita con aprobación la

---

[57] J. R. Vélez Torres, Curso de Derecho Civil, San Juan, 1983, T. II, pág. 109.

[58] R. E. Bernier, El Derecho de Accesión en Puerto Rico: El Abogado y su Cliente, Barcelona, Imp. Vda. de Daniel Cochs, 1970, pág. 90.

solución doctrinaria de utilizar la accesión invertida en los supuestos de construcciones extralimitadas de buena fe.[59]

**B**

Ahora bien, es importante destacar los criterios que conforman la buena y mala fe del edificante que se ha extralimitado, así como sus consecuencias. Entre los artículos del Código Civil que tratan la accesión, ninguno define lo que constituye la buena fe al edificar. Sólo contamos con las expresiones de los Arts. 363 y 1850 del Código Civil. El primero, define al poseedor de buena fe como aquel "que ignora que en su título o modo de adquirir exista vicio que lo invalide".[60] En cambio, el Art. 1850 define la buena fe del poseedor en los supuestos de prescripción adquisitiva como "la creencia de que la persona de quién recibió la cosa era dueña de ella, y podía transmitir su dominio".[61]

Al igual que en nuestra jurisdicción, en España se han enfrentado al hecho de no contar con una definición en el Código para la buena fe de un edificante. Ante esto, Diez-Picazo comenta que la buena fe significa: "que el que edifica, planta o siembra en terreno ajeno o con materiales ajenos o el que emplea para su obra una materia ajena o el que mezcla con la propia una cosa ajena, ignora por error

---

[59] Vázquez Bote, op. cit., págs. 369-370.

[60] 31 L.P.R.A. sec. 1424.

[61] 31 L.P.R.A. sec. 5271.

excusable que las cosas son ajenas y cree que son propias o, por lo menos, cree tener sobre ellas un derecho que le permite realizar aquellos actos".[62] De esta forma, en los casos de construcciones extralimitadas se entenderá que el edificante es de buena fe cuando ignore que el terreno en el que está construyendo es ajeno.[63] No obstante, entendemos que como parte del criterio de la buena fe, en el caso de un edificante que se extralimita, es necesario que el dueño del terreno invadido no se haya opuesto oportunamente. Ello es cónsono con la postura española mayoritaria y con lo dispuesto en los Códigos europeos. Por consiguiente, la buena fe del edificante que se extralimita en la construcción, junto a los demás requisitos, resultan en los efectos que ya hemos mencionado.

Por otro lado, conforme a la doctrina mayoritaria, entendemos que en los supuestos en que el edificante construya de mala fe, el dueño del terreno invadido puede ejercitar el derecho que le concede el Art. 299 del Código Civil por analogía. Es decir, éste puede exigir la demolición de la porción invasora o demolerla, en cuyo caso los gastos que ocasione tal demolición deberá satisfacerlos el edificante de mala fe.[64] No obstante, adoptamos la

---

[62] Diez-Picazo, op. cit., pág. 287.

[63] Verdera Izquierdo, op. cit., pág. 1815.

[64] Art. 299 del Código Civil, 31 L.P.R.A. sec. 1166. Entendemos que lo dispuesto en el Art. 298 del Código Civil no es aplicable al supuesto de una construcción extralimitada, ya que permitir que el dueño del suelo invadido obtenga la titularidad de la porción que invade su terreno, resultaría en complejos problemas de titularidad y desarrollo de difícil solución.

postura de Albaladejo en cuanto le reconoce al dueño del terreno invadido no sólo exigir la demolición o demoler la porción que se extralimita en su terreno a costa del edificante, sino que le reconoce la opción de poder exigir la compra del terreno invadido más los daños. En el caso de que tanto el edificante como el dueño del terreno actúen de mala fe, es de aplicación por analogía lo que dispone el Art. 300 del Código Civil. De esa forma, se entenderá que ambos actuaron de buena fe. Es de notar, que el dueño del terreno actúa de mala fe cuando "el hecho se hubiere ejecutado a su vista, ciencia o paciencia, sin oponerse".[65]

C

Por último, debemos señalar cuáles son las consecuencias que enfrentaría el edificante que al construir se extralimita de buena fe, pero no cumple con alguno de los otros cuatro criterios hoy adoptados. En primer lugar, en los supuestos en los que el edificante no sea el titular del suelo ni de lo edificado, ni haya contado con la autorización del verdadero titular, prácticamente se derrota su "buena fe". No se puede obligar al verdadero titular a comprar la porción invadida del suelo vecino por causa de la construcción extralimitada de un poseedor que no fue autorizado a construir. En estos casos, las consecuencias serán las mismas que en los supuestos de mala fe. Por el contrario, si el titular autorizó al edificante y éste actuó de buena fe al

---

[65] Art. 300 del Código Civil, 31 L.P.R.A. sec. 1167.

construir, el titular estará sujeto a las consecuencias de la accesión invertida.

A base del segundo criterio, si no se cumple con el requisito de una extralimitación no aplicará la accesión invertida. Ello es así ya que en el caso de que lo construido esté completamente en suelo ajeno, operará lo dispuesto en nuestro Código Civil sobre la accesión. De igual forma, en el supuesto de que lo construido de buena fe en suelo ajeno no forme un ente indivisible con la otra porción sita en suelo propio, le aplicará también la doctrina de la accesión que trata sobre el edificante de buena fe en suelo ajeno.

Por su parte, cuando el edificio tiene una importancia o valor menor al de la porción de terreno invadida, no opera la accesión invertida. Lo anterior tiene completo sentido porque la cuantía que resulta de dicho valor superior más los daños que la extralimitación pudo haber ocasionado sería mayor. Por lo tanto, es más costo efectivo demoler la porción del edificio que se extralimita.

## IV

En el caso de autos, el Tribunal de Primera Instancia, así como el Tribunal de Apelaciones, reconocieron que efectivamente la tercera residencia construida en la Parcela 35-A (residencia de la Sra. Myrna Laboy) invadió en forma de triangulo dos pequeñas áreas de la Parcela 34. Por tal razón, se trata de una construcción

extralimitada en suelo ajeno. El Tribunal de Primera Instancia, a base de un análisis firmemente cimentado en el expediente que tuvo ante sí y en la vista oral que se celebró, determinó que la residencia de la Sra. Myrna Laboy se construyó de buena fe.

El foro primario sostuvo que el edificante actuó conforme a la información que existía en ese momento, y que el Departamento de la Vivienda nunca clarificó. Además, al momento de la construcción de la tercera residencia, entre las dos parcelas en controversia existía una sección de verja que llevaba más de 30 años de construida. Así, tomando en cuenta la verja antedicha, y la ausencia de una determinación oficial de los linderos, el señor Laboy Roque construyó la tercera residencia en su "supuesto" terreno. Conforme a lo anterior, el Tribunal de Primera Instancia sostuvo que la construcción fue hecha de buena fe. Por tal razón, determinó segregarle la franja invadida a la Parcela 34 y agruparla con la Parcela 35-A, y a su vez, segregarle la misma cantidad de terreno a esta última y agruparla con la Parcela 34.[66] De esa forma, se evitaba destruir la tercera residencia y la verja.

Inconforme con el dictamen, los demandados (la sucesión titular de la Parcela 34 y quienes sufren la invasión) acudieron al Tribunal de Apelaciones. Éste revocó al foro primario y fundamentó su dictamen en virtud de un

---

[66] El remedio suscrito por el Tribunal de Primera Instancia se fundamentó en la recomendación provista por los ingenieros Humberto Meléndez, del Departamento de la Vivienda, e Ismael Carrasquillo, perito de la parte demandante.

plano que obra en el expediente y que alegadamente fue preparado por el ingeniero Meléndez el 30 de enero de 2003. En dicho plano no consta la existencia de la tercera estructura y la que es objeto de esta controversia. Sin embargo, conviene advertir que el referido plano no está firmado, ni tiene fecha de preparación, ni título. El foro intermedio justificó el uso del referido plano al concluir lo siguiente: "de la minuta de la vista en su fondo surge que el Tribunal admitió como evidencia dos cartas originales del Departamento de la Vivienda y el informe anejado del ingeniero Meléndez".[67] Así, luego de revisar dicha minuta, así como el expediente, surge que efectivamente el referido plano se admitió en evidencia como *Exhibit* 1 del codemandado Departamento de la Vivienda.[68]

No obstante, la conclusión del Tribunal de Apelaciones no compara con el análisis a la luz de la totalidad de la prueba testifical que tuvo ante su consideración el Tribunal de Primera Instancia. No surge del expediente que el foro primario haya actuado movido por pasión o prejuicio o que haya cometido error manifiesto en su apreciación de la prueba sino, más bien, éste ejerció su función de aquilatar la prueba desfilada según su mejor criterio. Evidentemente, al evaluar toda la prueba ante si, el foro primario dio menor valor probatorio al plano

---

[67] Apéndice del *certiorari*, págs. 15-26.

[68] Véase, Apéndice del *certiorari*, pág. 125.

alegadamente preparado por el ingeniero Meléndez. No vemos razón para descartar las determinaciones de hecho del foro primario, sobre todo cuando fue éste quien consideró, no sólo todos los documentos presentados, sino que también escuchó y observó la prueba testifical.

Es principio reiterado que un tribunal apelativo tiene que brindarle gran deferencia a las determinaciones de hechos y a la adjudicación de credibilidad establecida por el Tribunal de Primera Instancia, salvo que haya mediado pasión, prejuicio, parcialidad o error manifiesto.[69] Esto es así, porque el foro de instancia es quien ve y escucha a los testigos y, por lo tanto, está en mejor posición para evaluarlos.[70] En consecuencia, el foro apelativo no puede sustituir por sus propias valoraciones del expediente las determinaciones tajantes y ponderadas del foro de instancia.[71] Así, en ausencia de error, pasión o prejuicio la determinación del Tribunal de Primera Instancia merece gran deferencia. Por tal razón, erró el Tribunal de Apelaciones al revocar la determinación del foro primario basado en un mero documento del expediente y cuando ni siquiera contó con la transcripción de la vista oral.

Por otro lado, el Tribunal de Primera Instancia, para no destruir la residencia ni la verja en cuestión, tomó en

---

[69] Rolón v. Charlie Car Rental, Inc., 148 D.P.R. 420, 433 (1999).

[70] Pueblo v. Acevedo Estrada, 150 D.P.R. 84, 99 (2000).

[71] Rolón v. Charlie Car Rental, Inc., *supra*.

consideración las recomendaciones de los ingenieros comparecientes y ordenó "quitarle la franja invadida a la Parcela 34 y a su vez la Parcela 35 A deberá cederle la misma cantidad de terreno de su parcela a la Parcela 34".[72] En lo pertinente, tenemos que admitir que en estricto Derecho el foro primario erró al conceder ese remedio. Ahora bien, ante la nueva doctrina que hoy adoptamos, es necesario analizar la controversia aquí versada a la luz de los criterios adoptados.

Del expediente surge claramente que estamos ante un supuesto de construcción extralimitada y que dicha porción extralimitada forma un ente indivisible con el resto de la estructura. Además, conforme a lo señalado por el Tribunal de Primera Instancia debemos reconocer que el edificante obró de buena fe al construir en un terreno que creía que no era ajeno. No obstante, no contamos con la información necesaria para considerar los demás criterios. Por ejemplo, del expediente sólo surge que el edificante es usufructuario de la propiedad, es decir, no es el titular del suelo. Por ende, desconocemos si éste contaba con autorización del nudo propietario para construir la tercera estructura o si en el tiempo transcurrido ya ha advenido a ser titular del suelo. Además, es necesario evaluar si el dueño del terreno invadido se opuso oportunamente a la construcción en cuestión. Estos asuntos son vitales para sostener la determinación de buena fe del foro primario y

---

[72] Apéndice del *certiorari*, pág. 62.

para la aplicación de la doctrina hoy adoptada. Así, pues, es necesario que se presente prueba al respecto y el tribunal pueda considerar su cumplimiento.

Ahora bien, de cumplirse con los criterios anteriores, sólo faltaría por evaluar el criterio que dispone que el valor de la estructura sea mayor que el de las porciones de suelo ajeno invadidas. En el caso de que algunos de los criterios no se cumplan, la accesión invertida no aplicaría y conllevaría las consecuencias que ya hemos expuesto.[73]

## V

En armonía con lo antes señalado, se revoca la Sentencia del Tribunal de Apelaciones, Región Judicial de Caguas, y se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Caguas, para ulteriores procedimientos compatibles con lo aquí resuelto.

Se dictará Sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

---

[73] Es importante señalar, que sostenemos el dictamen del Tribunal de Primera Instancia en torno a la edificación de buena fe de la verja, la cual fue construida hace más de 30 años. En ese sentido, le aplicará la doctrina de la accesión ya que ésta fue construida en su totalidad en suelo ajeno. Por tal razón, en el caso de que se haya construido con materiales propios, le aplica lo dispuesto en el Art. 297 del Código Civil.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramiro Laboy Roque

   Peticionario

        v.            CC-2008-903    Certiorari

Olga Pérez y otros

   Recurridos

SENTENCIA

San Juan, Puerto Rico, a 26 de abril de 2011.

     Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la Sentencia del Tribunal de Apelaciones, Región Judicial de Caguas, y se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Caguas, para ulteriores procedimientos compatibles con lo aquí resuelto.

     Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

                       Aida Ileana Oquendo Graulau
                       Secretaria del Tribunal Supremo